HATTIE MATILDA WILLIAMS v. HENRY C. HODGES AND CHARLES C. HODGES.

*Land-contract—Default—Waiver—Notice to tenant at will.*

A contractor who has not fulfilled his own obligations cannot complain of the default of the other party.

A contract provided that the vendee of a house should pay a certain sum on taking possession, when completed, on or before a certain date. *Held*, that payment in advance and taking possession while the house was still unfinished did not waive the vendor's obligation to finish it.

Evidence that it was understood between the parties to a contract for the sale of a house, that taking possession in advance of the time fixed for doing so would not affect their rights and liabilities under the contract, was *held* admissible to show that the vendee did not thereby waive the vendor's obligation to complete it.

Where a house was sold under a contract and the vendee waived the contract right to its completion by a certain date, and was allowed to take possession in advance, it was *held* that the contract had been varied, and that the vendee did not hold under its conditions, but under the subsequent provisions, and was therefore a tenant at will, and entitled under Comp. L., § 4304, to three months' notice to quit.

Error to Wayne. Submitted Oct. 14. Decided Oct. 21.

PROCEEDINGS TO RECOVER POSSESSION of land under Comp. L., ch. 211. Defendant brings error.

*Fraser & Gates*, for plaintiff in error.

*Maybury & Conely*, for defendant in error.

COOLEY, J. Defendants in error bargained with Mrs. Williams, the plaintiff in error, to sell to her certain premises in Detroit, and united with her in the execution of a written contract, a copy of which is given in the margin.* It is conceded that Mrs. Williams made payments

NOTE.—In the following printed copy of the contract the words printed in italics were in writing in the original.

*A contract, made the *thirtieth* day of *October*, one thousand

on the contract as follows: $900 at its execution; $150 Nov. 7, 1878; $150 Nov. 16, 1878; $66.67 Dec. 4, 1878. It is also conceded that Mrs. Williams went into possession of the premises November 30, 1878, although the house was not completed. No payment was made after December 4, 1878, and defendants in error, on April 1, 1879, claiming that three monthly installments of $66.66 were then owing and unpaid, demanded of Mrs. Williams possession of the premises, and on her refusal to surrender it, instituted proceedings before a circuit

---

eight hundred and *seventy-eight*, between *Henry C. and Charles C. Hodges*, of Detroit, Michigan, of the *first part*, and *Hattie Matilda Williams, of the same place*, of the *second part, witnesseth*, as follows, to-wit:

I. The party of the first part, for *themselves, their* heirs, executors and administrators, agrees to sell to the party of the second part, ALL that certain piece or parcel of LAND, situate in the *City of Detroit, County of Wayne*, and State of Michigan, known and described as Lot numbered: *Nineteen* (19) *of Hodges Brothers subdivision of out lots Nos. 98, 99, 102 and 103 of the Woodbridge farm, so called, according to the plat of said subdivision, recorded in the office of the Register of Deeds for Wayne County, in liber one of plats, at page 308, said lot being situated on the westerly side of Lincoln Avenue, between Fulton St. and Grand River Avenue, together with the dwelling situated thereon.*

II. The party of the second part, for *herself, her* heirs, executors, administrators and assigns, agrees to pay to the party of the first part, for the said Lands, the SUM of *six thousand dollars* (*$6,000*), in the manner following, to-wit: *Nine hundred dollars* (*$900*) on delivery of this contract, and *three hundred dollars on taking possession of the building, when completed, on or before December° 1st, 1878, and* the remainder in *seventy-two* (72) equal *monthly payments*, at the office or place of business of the said party of the first part, or *their* assigns *of sixty-six and 67-100 dollars* (*$66.67*), *the first installment to be due and payable on the first day of December, 1878, and the balance in monthly installments, as above, on the first of each succeeding month, until paid*, with lawful interest from the date hereof, at the rate of SEVEN per centum until due, and at the rate of TEN per centum thereafter, payable semi-annually on the first day of January and July in each year upon so much of the purchase money as remains unpaid, and that as part and further consideration of the sale as hereby made, the party of the second part shall enter said lot for taxation in *her* own name, and pay all taxes and assessments thereon, ordinary and extraordinary, when due and demanded, and does hereby assume all taxes for the current year falling due after the date and delivery of this Contract. And the party of the second part agrees to insure the buildings on said premises, in some company to be approved by said party of the first part, and for *their* benefit, in the sum of *twenty-five hundred dollars.*

III. Forthwith, after the full payment of said purchase money, taxes and interest as aforesaid, and on the performance of all the conditions to be done and performed at the°time and manner above mentioned and specified, on the part and behalf of the said party of

court commissioner to dispossess her, as a person holding contrary to the conditions of the agreement under which she was occupying. The house was not completed when the proceedings were instituted and tried, and we are not informed that it has been completed since.

If we look no further into the facts that this—which would be the most favorable view to take for the vendors—we are at a loss to understand with what assurance they can insist upon retaining the judgment for possession which has been awarded to them. Conceding that

the second part, the *parties* of the first part agree to execute, or cause to be executed, to the party of the second part, a good and sufficient WARRANTY DEED for the said Land, to be delivered on the surrender of this Duplicate Contract.

IV. In case default shall be made by the party of the second part, *her* heirs, executors, administrators and assigns, in any of the conditions above stipulated to be performed by *her*, it shall and may be lawful for the party of the first part, if they see fit, to declare this contract void, and to re-enter upon the said premises at any time after such default, without serving upon the party of the second part, or any person holding under *her*, a notice to quit said Land. And in case this Contract shall be so declared void, the party of the second part shall thenceforth be deemed a mere tenant at will under the said party of the first part, and be liable to be proceeded against without notice to quit, under the provisions of an Act regulating proceedings in cases of forcible entry and detainer, and the acts amending the same. And the party of the first part, in such case, shall be at liberty to sell the land to any person or persons whomsoever, without being liable in law or equity to the party of the second part, or any person claiming under *her*, for any damages in consequence of such sale, or to return any payments made on account of this Contract, and any payments that shall have been made, may be held by the party of the first part as stipulated damages for the non-performance of this Contract. And said first party shall have a right to recover all damages sustained by reason of the holding over of said second party without permission. And it is hereby expressly understood and declared that TIME is and shall be deemed and taken as of the very essence of this Contract; and that unless the same shall in all respects be complied with by the said party of the second part, at the respective times and in the manner above limited and declared, that the said party of the second part shall lose and be debarred from all rights, remedies or actions, either in law or equity, upon or under this Contract.

V. And the *parties* of the second part hereby covenants to and with the party of the first part, that all buildings, erections and improvements now upon, or hereafter to be placed upon said premises, shall stand as security for the payment of the sums hereby covenanted to be paid by the party of the second part, and shall not be removed from said premises without the written consent of the party of the first part.

And it is further expressly agreed, That in case default shall be made by the party of the second part in any of the conditions stipulated to be performed by *her*, and the party of the first part shall see fit to declare this contract void, such declaration shall be made

the two payments of $150 each made by the vendee in November are together to be regarded as constituting the $300 which was to be paid on the first day of December, and that the vendee was in default in not making the subsequent monthly payments, yet it seems equally clear that the vendors fell in default by not completing the house December 1st, and that they have been in default ever since. Now when they complain of a default, it is upon the assumption that they have themselves performed, and a showing to the contrary is fatal to their case.

But it is said on their behalf that payment of the $300 and the completion of the house were to be simultaneous acts, and when the vendee made the payment and took possession without insisting on completion, she waived that requirement, and cannot now complain that the house was not finished as agreed. If payment in advance by one party could be a waiver of performance of an act to be done simultaneously by the other, then if the vendors had completed the house in advance, that on the same reasoning would have constituted a waiver of the right to the payment; a doctrine which the vendors, we must believe, would have been slow to apply to

by a brief notice thereof addressed to the party of the second part, and deposited in the Post Office in the *City of Detroit*, Michigan, and this shall constitute a good and sufficient notice and service thereof.

And it is further agreed, That no sale, transfer, assignment or pledge of this contract shall be in any manner binding upon the party of the first part, unless he first consent in writing hereon, to such sale, transfer, assignment or pledge.

This is a duplicate contract, and it is agreed by the parties hereto, that no assignment, sale, pledge or transfer of this Duplicate Copy shall be of any validity or force whatever, unless such assignment, sale, pledge or transfer be made on the copy in the hands of the party of the first part.

In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

HENRY C. HODGES, L. S.,
CHAS. C. HODGES, L. S.,
HATTIE MATILDA WILLIAMS, L. S.,
MOSES HILTON WILLIAMS, L. S.

In presence of
C. B. HODGES, }
J. C. MEYERS. }

themselves if they at the outset had been as prompt in performance as their vendee was. But the taking of possession was quite as far, in our opinion, from constituting a waiver. The vendee on the first of December was entitled to two things: *first*, a completed house ready for her; and *second*, the possession of it. How can it be said that because she was allowed to take the one, she thereby waived the other? And if she waived it, was it a perpetual waiver, or only for a reasonable time? If for the latter only, it would seem that the reasonable time to do that for which only thirty-one days were stipulated for in the contract, ought to have expired at the end of the five months which were fully completed before these proceedings were instituted. It ought to require a very strong showing to satisfy a court or jury that a reasonable time was five times what the parties themselves had agreed upon.

But the vendee on the trial of the cause on appeal in the circuit court offered to show that it was understood between the parties that her taking possession should not affect the rights and liabilities of the parties under the contract. The plain import of this was that

---

*It is hereby agreed by the parties hereto that when the principal sum of two thousand dollars shall have been paid on the within Contract, the parties of the first part, on the surrender of this Contract, shall give unto the party of the second part, their heirs or assigns, a Warranty Deed of the within described premises, upon condition that the party of the second part shall give them a First Mortgage for the amount of said Contract unpaid, with interest according to the terms of said Contract; and privilege is hereby given to the second party to pay the amount of the Contract or any part at any time.*

*HENRY C. HODGES.*
*CHARLES C. HODGES.*

*Oct. 30th, 1878.—Received on the within Contract Nine Hundred Dollars, being first payment, as follows: Cash Seven Hundred Dollars, and discount allowed on price Two Hundred Dollars.*
*HODGES BROTHERS.*

*$150.—Received Nov. 7, 1878, One Hundred and Fifty Dollars ($150) on the within contract.*
*HODGES BROTHERS.*

*$150.—Received Nov. 16th, 1878, One Hundred and Fifty Dollars on the within Contract.*
*HODGES BROTHERS.*

*Dec. 4th, 1878.—Received on the within Contract Sixty-six and 67-100 Dollars, being payment due Dec. 1, 1878.*
*HODGES BROTHERS.*

the vendee was to lose no rights—in other words, to waive nothing—by going into possession. The circuit judge, we think, must have misunderstood this offer or he would have received the evidence. It was certainly proper for the purpose of excluding the very inference which defendants in error now insist we shall draw.

But the case of the vendors was fatally defective for another reason. If the vendee went into possession under a waiver of the right to a completion of the house, and when she had no legal right to take possession without such waiver, then this constituted a very important change in the contract, and the vendee while thus in possession would not have been holding under the conditions of the contract, but under the subsequent permission. She would therefore have been a tenant at will and entitled to three months' notice to quit under the statute. Comp. L., § 4304. This notice was never given her.

As the defects in the case are such as no showing could overcome we shall reverse the judgment with costs of all the courts without awarding any new trial.

The other Justices concurred.