## EX REL. JOHN ARNO v. WAYNE CIRCUIT JUDGE.

*Attorney's authority—Notice of retainer—Act 113 of 1877.*

Act 113 of 1877 provides that suits for labor debts may be brought against a corporation and individual stockholders jointly. Such a suit being brought, the corporation counsel gave the plaintiff's attorneys verbal notice of retainer, but certain attorneys retained by the stockholders, without giving any notice of retainer at all, pleaded in abatement *in the name of the corporation* before the corporation counsel had pleaded. The latter afterward pleaded the general issue. Plaintiff's attorneys paid no attention to the plea of abatement, and were defaulted. Mandamus was granted to vacate the default and strike the plea in abatement from the files.

Act 113 of 1877 is severely criticised for limiting to two years the period within which suit may be brought against a stockholder of a manufacturing corporation for a labor debt.

*It seems* that where counsel appear in the name of a party by whom they have not been retained, and put in a plea different from one that is afterward entered by counsel duly authorized, the opposite party is entitled to relief against their acts.

MANDAMUS. Motion submitted Oct. 21, 1879. Granted Jan. 7, 1880.

*Griffin & Dickinson* for the writ.

*Atkinson & Atkinson* against.

COOLEY, J. Stripped of all the circumstances not necessary to an understanding of the legal questions involved, the facts in this case are the following:

The Marquette & Pacific Rolling Mill Company is a manufacturing corporation, having its field of operations and its principal office in Marquette county. Its president resides in the county of Wayne. The relator claims to have a demand against the company for labor performed for it. The Constitution makes the stockholders individually liable for all such debts. Article 15, § 7. By the law, as it existed when the debt was contracted, suit to enforce the liability against the stockholders could only be brought after judgment and execution returned unsatisfied against the corporation (Comp. L., § 2852); but this was so changed by the amendatory act of 1877 as to permit the company and any of its stockholders to be jointly sued, but the act provides that no levy shall be made upon the property of stockholders, under an execution issued upon the joint judgment, until the property of the corporation shall have been exhausted. The same act, while limiting suits against the corporation to six years from the time the right accrued, declares that the liability against the stockholders must be enforced within two years from the time when payment for the labor became due, and not afterwards. Public Acts 1877, p. 95, § 35. It also provides that personal actions against the corporation shall only be commenced in the county where the works of the corporation are situated, or where its business office is located. Id. p. 96, § 37.

The relator brought his suit in the county of Wayne just as the two years from the time his demand accrued was about to expire, and joined as defendant with the corporation Mr. Luther Beecher, who was a principal stockholder, and who is said to be the only stockholder pecuniarily responsible. It is manifest from the papers before us that the suit was brought in Wayne county by either the express or the tacit consent of the corporate officers. The reasons for this are not given, but there were ample reasons of convenience, since not only did the plaintiff's attorneys reside in Wayne county, and the president of the corporation, but so did Messrs. Med-

daugh & Driggs, who had long been the standing counsel for the corporation, and who were relied upon to take charge of its litigation. So it seems did Mr. Beecher and his attorneys. After service of process had been made upon the president, Messrs. Meddaugh & Driggs notified the plaintiff's attorneys verbally of their retainer to defend, and this notice was accepted as sufficient.

After declaration was filed, however, Messrs. Atkinson, who had been employed by Mr. Beecher to defend him, filed and served in the name of the corporation, by themselves as its attorneys, a plea to the jurisdiction of the court. It is conceded that these gentlemen were never employed by the corporation, and that they had no authority whatever to make use of its name, unless their employment for the other defendant would authorize it. It was said, however, that as they actually did assume to appear for the corporation before there was any valid appearance by written notice served by the regular counsel for the corporation, we are bound to treat their appearance as authorized, and to hold it valid. I deem it necessary to spend no time upon this argument. There are cases in which, where third parties have acquired rights in consequence of the unauthorized appearance of attorneys in a cause, the parties, for the protection of these rights, have been held bound by the appearance, and have been turned over to the attorneys for their remedy. But this is the first instance, I presume, in which it was ever claimed that an attorney might appear without authority, take charge of a party's defense against his remonstrance, and, while admitting that he was never employed, insist that the court must conclusively presume that he was. The mere statement of the proposition seems to me sufficient to demonstrate how unfounded it is.

Messrs. Meddaugh & Driggs afterwards filed a plea of the general issue in the case, but the Messrs. Atkinson, taking no notice of the issue thus formed on the merits, entered the default of the plaintiff for want of reply to the plea in abatement. A motion being made to the

court to set aside this default; it was granted on the terms of paying costs. The plaintiff insists that he was entitled to it as a matter of right, and instead of paying costs, applies for the writ of mandamus.

In support of the action of the circuit judge, it is urged that the oral notice of appearance given by Meddaugh & Driggs was wholly inoperative, because the rules of court require all notices to be in writing. The question whether that notice was good or bad is a question exclusively between the attorneys giving and receiving it, and is wholly foreign, so far as I can perceive, to any question now before us. An ineffectual notice by an authorized attorney could give an unemployed attorney no right. When Meddaugh & Driggs filed a plea they were properly in court as attorneys for the corporation, and no one else was, because no one else was employed. This application is to compel the striking of an unauthorized paper from the files, and it is no more and no less unauthorized because other proceedings were irregular or ineffectual. And I trust it is not necessary to show that an unauthorized appearance cannot entitle the party appearing to demand costs.

If it were essential to Mr. Beecher's defense on the merits that he should have a right to make use of the company's name, something might be said in favor of the action of the circuit court. But this is not pretended, and indeed, was denied by this court when this motion was first presented. Mr. Beecher insists on making use of the name of the corporation to abate the suit against it, thereby compelling the plaintiff to bring suits and obtain judgments at the two extremes of the State, and postponing to a future and wholly uncertain period any resort to the property of the stockholder. The merits of the suit may obviously be tried in one suit as well as two, and their investigation can in no manner be aided by defeating the present suit against the corporation.

It is urged, however, as a very strange and suspicious

circumstance, that the corporate officers should object to Mr. Beecher defeating the suit by the plea in abatement, and this objection is thought, with other facts, to prove an understanding between the officers of the corporation and the plaintiff to establish a corporate liability against Mr. Beecher. If this plaintiff is endeavoring to establish an unfounded claim, and the corporate officers are aiding him to do so, there is a dishonest combination which should be defeated; but we have no means of trying on this motion whether there is or is not such a dishonest understanding, for the very obvious reason that we cannot investigate the *bona fides* of the claim. The question arising upon that is one for a jury in the circuit court. If we could look into it here, I am at a loss to understand how the consent of a corporation to be sued in Wayne county is to be deemed by itself a suspicious circumstance. It is, in fact, a circumstance consistent either with honest or dishonest motive. It indeed saves to the plaintiff the necessity of bringing two suits; but it certainly ought not to be corporate honesty that the officers should have made a creditor all the trouble and costs possible. They ought, on the other hand, if they believe his claim honest and fair, to recognize it; and if they dispute its fairness, they should on their own account, as well as on that of the claimant, facilitate a convenient and inexpensive trial. And there may well be cases in which the corporate officers ought to aid, rather than obstruct a suit against a stockholder. Suppose the stockholder to be one who, discovering the venture a losing speculation, undertakes to escape his due proportion of the losses which others have borne, and by dilatory pleas and expensive litigation seeks to defeat a laborer in the recovery of a demand honestly incurred, and how can it be said that the corporate officers are not morally bound to aid the laborer in enforcing the liability which the stockholder voluntarily assumed in taking his stock? It is true that on the papers before us we have no right to infer that the case supposed is

the case a trial on the merits will disclose. But we have just as little right to infer the opposite, and the infirmity of the case for Mr. Beecher on this motion, as it seems to me, consists in this: that it rests exclusively on the assumption that extraordinary and suspicious proceedings are being taken against him, which he must be allowed to defeat by a more extraordinary and wholly unprecedented and unauthorized use of the corporate name. Obviously we cannot allow ourselves to be influenced on this motion by suggestions as to what the real merits are, when we have neither the means nor the right to inquire into them.

In the view I take of the position of the parties on the pleadings, the cases examined by my brother Campbell have no relevancy, and I therefore do not refer to them further. I think the writ should issue.

I cannot refrain, however, from noticing more specifically what seems to me the extraordinary fact that the act of 1877 should have limited the constitutional right of a laborer to enforce his demand against stockholders to two years, when for all similar demands six years are given. If the purpose of this act had been to defeat the constitutional right, it could not have contained a provision more directly calculated to further it. It was held in *Hanson v. Donkersley*, 37 Mich., 184, that the liability of the stockholder was only secondary; but whether primary or secondary, the laborer will naturally look to the corporation first, and, except in cases of corporate bankruptcy, may usually expect, for some considerable period after the labor is performed, to have payment made or provided for by the corporation itself. As stockholders very often reside at a distance, and may not readily be found when the creditor discovers a necessity for resorting to them, this short statute of limitations may almost be said in many cases to give complete immunity, especially as it makes no exception of persons out of the State. The stockholder in a failing Lake

Superior corporation, residing in Detroit or Boston, if he finds laborers likely to pursue him with personal demands, has only to take a pleasure excursion through Europe and he washes his hands of all legal obligation. This is certainly not just, and whether it is or is not competent for the Legislature thus to limit the remedy, there can be no question, as it seems to me, that it never should have been done. It was held in *Pereles v. Watertown*, 6 Biss., 79, that a two-years limitation in the case of municipal bonds, which are usually sold abroad, was unconstitutional, as impairing the obligation of contracts; but it was certainly quite as just a limitation as the one here. I refer to this not because it is involved in this motion, but because of the importance it seems to have had in influencing the action of the parties in this case. If the statute must be construed, as was claimed, in opposition to this motion, I desire that nothing I may say or assent to in this cause shall imply an opinion that it was competent for the Legislature to pass it. Statutes of limitation cut off the remedy because the party has not, within a reasonable time, availed himself of it; and it is certainly a very notable fact that the Legislature should deem it reasonable that the creditor be required to pursue the party secondarily liable with thrice the promptitude and vigor which is demanded in seeking redress against the principal debtor.

A mandamus should issue as prayed.

MARSTON, C. J. I concur in the opinion of my brother Cooley. I think parties should have a voice in the appointment of counsel to represent them in court, and that where counsel appear without authority, the party in whose behalf they assume to act has a clear right to the active assistance of the court in the premises. And so where different counsel assume to and do appear for one and the same defendant, and put in separate pleas, to the embarrassment or delay of the plaintiff, he may come in, where it appears one is acting without authority,

and obtain relief.   To say that the parties would have a remedy against the attorney would not be a sufficient protection, and should not be enforced upon a person where a more simple one can be reached, and is applied for seasonably.

GRAVES, J.   The corporation is sued as debtor and Beecher is joined because he is a stockholder.   They are distinct defendants and have full power to make defense separately.   By becoming a member of the corporation Beecher consented to its power to select its own counsel and defend suits in its own way.   He agreed that it should act for itself, through its own proper agencies, in regard to such things, and independently of any control by strangers or others not vested with the power, even though they should be stockholders.   The making of an attorney requires two things, neither of which can be done by a third party, where there is no question of capacity: *first*, an agreement by the attorney to be attorney for the party; *second*, an agreement by the party to have him for attorney.

Now, this corporation is in law a person capable of making an attorney to represent it; and Mr. Beecher cannot make one for it, or step into its place of client when he is made, in order to control him.   Mr. Beecher is not the corporation, nor the agent of the corporation, for any purpose of the kind.   He can make an attorney for himself in the suit, and defend on any ground open to him, whether it be one which has no relation to the mode of proceeding in the action between the plaintiff and the corporation, or one which concerns the effect, or supposed effect, upon him of such mode of proceeding. I do not pause to inquire about the limits within which he would have to be confined in grounding a defense upon the manner and regularity of the litigation between those parties.   A suggestion is, however, ventured that if he has any right at all to say that the suit, as brought against the corporation, cannot bind him—that the con-

42 MICH.—47.

trolling corporate agencies, whatever the motives, cannot as to him, waive objections to the bringing of the action here—he can make use of the right as cause of personal defense, and has no occasion to try and force it into the mouth of the co-defendant.

I do not see how the court, at his instance, can compel the corporation, either by direct or indirect measures, to file this or that plea, and that, in short, appears to be the gist of the contention.

I prefer to reserve my opinion on the other matters referred to, but I concur in the opinion that the mandamus should issue, on the grounds I have indicated.

CAMPBELL, J., dissenting. Relator sued the Marquette & Pacific Rolling Mill Company and Luther Beecher, one of its stockholders, upon a claim set up as a labor debt, under Act No. 113 of the Public Laws of 1877, revising the statutes concerning mining and manufacturing companies. This statute, which enables the holders of labor debts to enforce them against stockholders in the same action in which the corporation is sued, requires the joint action to be brought within two years; and it also declares that personal actions against the corporation "shall be commenced only in the county where the mine, or smelting or other manufacturing works are situated, or in the county where the business office in this State is located." Sec. 37, p. 96.

The suit was brought just before it would have been otherwise barred by the statutory limitation. It was begun in Wayne county, where Beecher lives, and where the president was also found. The company, however, appears to have neither mine, factory nor business office, within the statute, except in Marquette county.

On the 23d of June, 1879, declaration was filed. On the 9th day of July, 1879, a plea was filed by Atkinson & Atkinson, as attorneys for the corporation, verified by the oath of Beecher, setting up the fact that the company's business and offices were not in Wayne, but in Marquette, and claiming that the suit was wrongly brought

in Wayne. This plea the plaintiff's attorneys refused to accept, on the ground that they had already received notice of retainer from Meddaugh & Driggs, and on inquiry agreeing that they had no other objection. Beecher himself appeared by J. P. Whittemore and set up the same defense under his notice attached to the plea of the general issue.

On the motion to be presently referred to, before the circuit judge of Wayne county, there were affidavits that on the 23d of June Meddaugh & Driggs informed plaintiff's attorneys, through one of their clerks, that they were retained, and plaintiff's attorneys served a copy of declaration on them. No written notice of retainer and no written acceptance of declaration was given until after the plea was served by Messrs. Atkinson. Then a written notice of retainer was made out and dated back to June 23d.

Messrs. Atkinson were employed by Beecher to appear for his co-defendant, the corporation, and set up this defense to the jurisdiction of the Wayne circuit. Meddaugh & Driggs had been engaged in previous litigation for the corporation, but on this occasion were employed by William W. Wheaton, who had been and continued, so far as appears, general agent and manager. The corporation had quit business, and he resides in Detroit. There were affidavits indicating that his interests in the present controversy were adverse to those of the company, and that he was desirous of enforcing the claim.

Upon the refusal of plaintiff's attorneys to accept their plea, Messrs. Atkinson applied to Meddaugh & Driggs to induce them to concur in setting up the defense referred to, offering indemnity for costs, and stating their willingness to have the appearance for that purpose made in the name of whichever firm of attorneys those gentlemen saw fit to designate. Meddaugh & Driggs refused to concur in that defense, and put in a plea of the general issue alone.

Atkinson & Atkinson in due time entered default of

plaintiff for not answering their plea, and the default was made absolute. Plaintiff applied to the Wayne Circuit Court to open the default and set aside the plea upon the facts before stated. The court found that there had been no written notice of retainer or acceptance of declaration before the Atkinsons pleaded, and refused to open the default except on payment of ten dollars as costs of motion.

Application is now made for a mandamus to compel the action applied for as matter or right.

Upon a former application, made to us *ex parte*, we declined to interfere, on the ground that Mr. Beecher was entitled to this defense, and that the company could not deprive him of it. We allowed a further application to be made, on the claim that he had waived the defense. We have now heard all that the parties on either side have to present on the subject, and may dispose of it advisedly.

I think the circuit judge was right in holding that when Messrs. Atkinson appeared there had been no such appearance by any one else as could have been made the foundation of legal action to be had under it. Rule 6 requires all notices to be in writing. Rule 12 requires all agreements between parties or their attorneys to be in writing. Rule 11 declares that a defendant shall be considered as appearing when written notice of retainer is served or when he pleads in any way. And service may be accepted by a defendant himself, but there must be sworn proof of the genuineness of the acceptance, which plainly contemplates written acceptance. These rules do not contemplate that any party can be bound by action of himself or his attorneys in subjecting him to liability in the suit, where proof of the fact can only be made by the uncertain means of parol evidence.

When the Atkinsons appeared there was nothing to authorize their action to be treated as a nullity. The plaintiff had no right to assume they were acting with-

out authority. The authority of attorneys in good standing is presumably valid, and if there is any appearance which is not authorized, there must be an application to the court by some one who has a right to make it before it can be disregarded.

But inasmuch as all the facts are substantially admitted, it will not be improper to consider the questions raised, without, however, assuming to question any matter legitimately within the discretion of the circuit judge.

The statute of 1877 is one relied upon by the plaintiff himself as his only authority for bringing the present action in such a way as to reach stockholders in the same proceeding with the company. It cannot be doubted that the Legislature may make regulations concerning the venue of personal actions, and courts must respect their wishes. There are manifest reasons in such cases as this why debts for labor may have been subjected to peculiar provisions. It is certainly much cheaper to bring one suit than two, and to reach a judgment at one time against not only the company, but any or all of its corporators. It is also not unlikely that the evidence on one side or the other, if not on both sides, can be found on the spot where work is done, or in the company's office, and that delay and expense are usually to be saved by having the suit tried where the evidence is to be found. The statute is much more explicit than most statutes fixing a venue, and contains a positive prohibition against suing elsewhere. We need not inquire as to what may be done to waive such a right by the consent of all parties. No doubt a judgment would be good where no such point is raised, because the pleadings would not indicate necessarily where the proper place of suit is. The questions we are now considering do not involve this general subject. We are to see in what position these litigants are placed.

Beginning with the fact that the plea filed by Messrs. Atkinson is presumptively authorized, the application to get rid of it does not come from the corporation, but

from the plaintiff. The defense is one of which it is too plain for argument the corporation cannot justly or lawfully deprive Beecher. There is evidence not overcome that he is the only responsible stockholder, and that the company is not solvent. If this is so,—and whether so in fact, the circuit judge might have been so. impressed,—Beecher is the only substantial defendant, and the company is rather a formal than substantial co-defendant. Whether Beecher in this position had or had not a strict legal right to employ attorneys to represent the company, he had at least a right to expect honest co-operation in saving him from unlawful vexation. We cannot determine the fact whether the company's agent is or is not really interested against the company, and instructing attorneys for it to waive its right to be sued only in Marquette. But it is very certain a stockholder sued in this way may justly complain of any attempt in the name of the company to compromise his interests. *Philipson v. Earl of Egremont*, 6 Q. B., 587; *Edwards v. Kilkenny & Great S. & W. Ry. Co.*, 2 C. B. (N. S.), 397: 40 E. L. & Eq., 316. Having offered to allow the substitution of the attorneys whom the plaintiff desires to have substituted, if they would not give away this defense, he makes out a strong equity against any interference, and the circuit court was right in refusing to disturb the case, unless there is some legal rule depriving that court of any discretion in the matter.

If Mr. Beecher has waived any personal right by the form he has adopted in pleading, that is only an additional reason why any advantage obtained by the other plea should not be taken from him. But we think counsel for plaintiff are entirely in error in so claiming. The remedy given by this statute is a special one, and cannot be governed altogether by the more nice than just rules which, according to some lines of decision, might belong to other cases. The right of a party to object to a suit brought in the wrong forum is a substantial right, and the plea or other form of objection setting it

up is not regarded as strictly a plea in abatement, or as subject to the same minute criticism. We held in *Haywood v. Johnson*, 41 Mich., 598, that such a ground could be taken upon motion. We held it sufficient ground for prohibition in garnishee proceedings in *McCloskey v. Judge of Wayne*, 26 Mich., 100. In England the objection, where the proceedings are in any way under statutory limitation, has been permitted in various ways, not only by preliminary plea but otherwise. In *Parker v. Elding*, 1 East, 352, a statute nearly in terms like the one before us, requiring that no suits for certain debts should be brought elsewhere than in the court of requests of Ely, was held to authorize the defense to be relied on at the trial, because the law being a general one, the plaintiff was bound to know he could not sue elsewhere. And Lord Kenyon carefully discriminates between cases where the law requires the objection to jurisdiction to be taken in a certain way, and those where it does not. The case of *The Dundalk Western Ry. Co. v. Tapster*, 1 Q. B., 667, in some respects resembles the present. There a railway charter provided that suits for delinquent stock subscriptions might be brought in any of the Queen's courts in Dublin. A suit being brought in an English court the objection was pleaded, and the question came up directly in regard to the judgment on demurrer whether it was in abatement or in bar. The court held that it was in substance though not in form a plea in bar, and that the defense was complete. Lord Denman remarked: " The right and remedy are both created by the legislature, and the company are bound to pursue the remedy provided by it." In *Bank of Australasia v. Nias*, 16 Q. B., 717, it was held that a remedy very much like the present, created in Australia, could only be pursued in the Australian courts.

A somewhat similar question of privilege has been up in the case of attorneys sued in other courts than those where they belong, and it was held by the Common Pleas that such a plea was properly put in by attorney, and

not in person. *Hunter v. Neck,* 3 M. & G. 181; *Groom v. Wortham,* 5 Scott N. R., 799.

It is familiar practice to discharge from arrest on mesne process in such cases on motion. *Secor v. Bell,* 18 Johns., 52; *Watson v. Judge of Superior Court,* 40 Mich., 729.

Such questions come up frequently in regard to the jurisdiction of municipal courts, and a prohibition has been allowed where a motion for nonsuit on the trial was refused, and after verdict,—it being held there was no waiver. *Jackson v. Beaumont,* 24 L. J. Exch., 301: 32 E. L. & Eq., 587. And in *Le Tailleur v. S. E. Railway Co.,* 3 C. P. Div., 18, where the liability to suit depended, as here, upon the place of carrying on business, the prohibition was granted on affidavits. In *Watts v. Kinney,* 23 Wend., 484, the earlier cases are discussed.

It would not be wise,—as was intimated in *Haywood v. Johnson,*—to make such an important right dependent on any mere technicality of procedure. All that a plaintiff can ask is notice in some intelligible way that the defense is relied on. He is bound to know he cannot sue these parties out of the proper forum without their consent, and he cannot complain if they do not give it. The plea to the jurisdiction in such cases is substantial, and under the decisions referred to it should be so treated.

I think the defendant Beecher had a right to rely on the defense by his notice. I think also that the plea of the company was sufficient to raise the same question, and that no reason is shown why the circuit judge had not a right to refuse to disturb it, except on the terms he saw fit to grant. And I also think that under the facts, not seriously disputed, it would do no good to plaintiffs to have a mandamus, when Beecher's defense is not cut off.

There is no ground in my opinion for the writ.